IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 10-3016 consolidated with |
| RICHARD McNAY, INC., a/k/a RICHARD McNAY TRUCKING, INC., | ) ) ) ) ) | No. 10-3042 |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Liberty Mutual's Motion to Dismiss Plaintiff's Counts II – IV of the First Amended Complaint (Motion) (d/e 19) and Liberty Mutual's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Counts II – IV of the First Amended Complaint (d/e 20). Defendant has filed Richard McNay, Inc.'s Response to Liberty Mutual's Motion to Dismiss (d/e 23) and Richard McNay, Inc.'s Memorandum of Law in Support of its Response to Liberty Mutual's Motion to Dismiss (Response) (d/e 24). This is a consolidated action. In Case No. 10-3016,

1

Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company (collectively Liberty Mutual) are Plaintiffs, and Richard Mc Nay, Inc. (McNay) is Defendant. In Case No. 10-3042, McNay is Plaintiff and Liberty Mutual is Defendant.

This matter is fully briefed and ripe for adjudication. For the reasons described below, the Motion is granted in part, and denied in part.

FACTS

Accordingly to McNay's Plaintiff's First Amended Complaint (McNay Complaint) (d/e 10), McNay is a Delaware corporation with its principal place of business in Quincy, Illinois. Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company are Massachusetts corporations conducting insurance business in the State of Illinois. Liberty Mutual issued various workers' compensation insurance policies to McNay. These policies contained retrospective premium endorsements, meaning that the final earned premiums under the policies were based, in part, on losses incurred under the policies. Liberty Mutual managed, handled, and disposed of all claims under the policies on McNay's behalf.

Terry Wulf, a former McNay employee, claimed that on December 26, 2007, he suffered an injury while on the job. Wulf alleged that he slipped

and fell, injuring his lower back. Three Liberty Mutual claims adjusters investigated Wulf's claim before Liberty Mutual referred investigation to its in-house counsel and an outside law firm. On January 18, 2008, Wulf's chiropractor released Wulf to return to work. McNay faxed a copy of this release to Liberty Mutual. Wulf did not return to work, however, and on January 25, 2008, McNay terminated his employment. Liberty Mutual stopped paying temporary total disability (TTD) benefits to Wulf on that date.

Then, on March 20, 2008, McNay received a letter from Wulf's attorney. The letter stated that Wulf's injury had temporarily disabled him and that he was still unable to work. McNay forwarded this information to Liberty Mutual, which then re-opened Wulf's claim without consulting McNay. On June 8, 2008, Wulf had surgery on his back, and Liberty Mutual reinstated his TTD benefits. Those benefits continued until September 28, 2008, when Wulf had recovered from his surgery and returned to work with a different employer. In addition to the TTD benefits, Liberty Mutual paid for Wulf's surgery, physical therapy, and all other medical bills and expenses from June 16, 2008, through September 28, 2008.

In the interim, McNay learned that Wulf had taken a new job with a different trucking line on January 8, 2008, prior to being released back to work by his chiropractor. McNay requested that Liberty Mutual conduct an investigation to determine whether Wulf was truly disabled. Liberty Mutual told McNay that its investigation had not turned up any information indicating that Wulf had been employed between January 8, 2008, and June 6, 2008. Liberty Mutual turned the file over to a special investigative unit and continued to monitor the claim.

McNay, dissatisfied with Liberty Mutual's response, decided to conduct its own investigation. McNay discovered that Wulf had received a speeding ticket in Wyoming on March 12, 2008, while driving a truck for VandeKamp Trucking, one of McNay's competitors. McNay requested payroll records from VandeKamp. The records revealed that Wulf worked as an over-the-road truck driver, and that his first day of work with VandeKamp was January 8, 2008. Wulf had worked for VandeKamp through June 20, 2008, collecting $21,256.57 and logging 62,452 miles. Liberty Mutual did not discover any of this information during the course of its investigation.

McNay communicated this information to Liberty Mutual, and told

4

the insurer that it was not authorized to make any settlement with Wulf or his attorney. McNay wanted to proceed with a fraud action against Wulf. Nonetheless, Liberty Mutual kept reserves in excess of $160,000 on the Wulf claim. McNay continued to insist that Liberty Mutual deny Wulf's claim, subrogate the claim, or file a fraud action against Wulf. On July 1, 2009, Margaret Matlock, a Liberty Mutual employee, informed McNay that it had settled the Wulf claim for one lump-sum payment of $100,000.

Settling the claim "directly affected the retrospective adjustments and the amount claimed due and owing to [Liberty Mutual] from McNay under the workers' compensation policies." McNay Complaint, ¶ 20. McNay subsequently obtained workers' compensation insurance policies from a different carrier, but alleges that, due to the way the insurance industry calculates premiums, settling the Wulf claim has caused McNay's premiums to go up.

McNay also alleges that Liberty Mutual owes it $65,266 under automobile liability/fleet policies that Liberty Mutual issued to McNay in March 2004. McNay alleges that it posted an $82,600 line of credit in order to obtain the fleet policies, and that the balance due for all claims under the policies was $56,184 as of December 2009. McNay further states

that Liberty Mutual refuses to refund a $38,850 loss deposit that McNay paid, despite the fact that all claims on the fleet policies are closed. McNay claims that Liberty Mutual owes it the loss deposit amount plus the difference between the line of credit McNay posted and the actual losses sustained under the policies, for a grand total of $65,266.

On January 25, 2010, Liberty Mutual filed suit against McNay in this Court, alleging breaches of contract on various workers' compensation and fleet policies that McNay held with Liberty Mutual. Complaint (d/e 1). Previously, on January 14, 2010, McNay sued Liberty Mutual in the Circuit Court of Adams County, Illinois. Cent. Dist. of Ill. Case No. 10-3042, Notice of Removal (d/e 1), Ex. A, Complaint. McNay alleges breach of contract on the workers' compensation policies; violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 ILCS 505/1 et seq.; unjust enrichment; bad faith under § 155 of the Illinois Insurance Code; and breach of contract on the fleet policies. Liberty Mutual removed that action to federal court on February 18, 2010, and on March 19, 2010, the Court consolidated the removed action with this action. Text Order of March 19, 2010. McNay filed the McNay Complaint on April 7, 2010.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). The Seventh Circuit has held that a claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). Additionally, a party is allowed to set out claims in the alternative, regardless of whether the claims are inconsistent. Fed. R. Civ. P. 8(d)(2)-(3). If a party makes alternative statements, "the pleading is sufficient if

any one of [the statement of the claims] is sufficient." Fed. R. Civ. P. 8(d)(2).

For purposes of a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in a complaint. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court views the facts in the light most favorable to the non-moving party, in this case, McNay.

## ANALYSIS

Liberty Mutual argues that the Court should dismiss Counts II, III, and IV of the McNay Complaint for failure to state claims. The Court addresses each Count in turn.

I.   COUNT II: CONSUMER FRAUD

Liberty Mutual asks the Court to dismiss Count II of the McNay Complaint because it fails to state a claim under the Illinois Consumer Fraud Act. Liberty Mutual argues that McNay's allegations in Count II are identical to his breach of contract allegations, and that such claims do not support a cause of action for consumer fraud under Illinois law.

To state a claim under the Illinois Consumer Fraud Act, a plaintiff must allege that: (1) the defendant committed a deceptive act or practice;

8

(2) the defendant intended that the plaintiff would rely on the deception; (3) the deception occurred in a course of conduct involving trade or commerce; (4) the plaintiff sustained actual damages; and (5) the defendant's deception proximately caused the plaintiff's damages. Connick v. Suzuki Motor Co., 675 N.E.2d 584, 594 (Ill. 1996); Zankle v. Queen Anne Landscaping, 724 N.E.2d 988, 992 (Ill.App. 2d Dist. 2000). The Consumer Fraud Act applies to "unfair practices in adjusting insurance claims." Casualty Ins. Co. v. Hill Mechanical Group, 753 N.E.2d 370, 376 (Ill.App. 1st Dist. 2001).

The Illinois Supreme Court has clearly stated that "[a] breach of [a] contractual promise, without more, is not actionable under the Consumer Fraud Act." Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 844 (Ill. 2005). Thus, when "breach of contract and Consumer Fraud Act counts rely on the same facts," it is clear that the consumer-fraud claim "is merely a breach of contract count clothed as a violation of the Consumer Fraud Act." Sklodowski v. Countrywide Home Loans, Inc., 832 N.E.2d 189, 196 (Ill.App. 1st Dist. 2005); see Zankle, 724 N.E.2d at 992 ("Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could

9

convert any suit for breach of contract into a consumer fraud action.")

In Avery, the plaintiffs utilized the promises made by the defendant insurance company in the insurance policy to define their consumer fraud action. Avery, 835 N.E.2d at 843-44. In the consumer fraud count, the plaintiffs specifically alleged that the defendant violated express written provisions of the policy, and that the defendant failed to fulfill its contractual obligations. Id. The Illinois Supreme Court held that the consumer fraud action failed as a matter of law because the allegations were based solely on the fact that the defendant breached the insurance policy. Id. at 844. Likewise, in Zankle, the Illinois Appellate Court rejected the plaintiff's consumer fraud claim because consumer fraud "involves more than the mere fact that a defendant promised something and then failed to do it." Zankle, 724 N.E.2d at 993; see Kindernay v. Hillsboro Area Hosp., 851 N.E.2d 866, 880 (Ill.App. 5th Dist. 2006).

In Sklodowski, the plaintiff brought a breach of contract claim and a consumer fraud claim under the Illinois Consumer Fraud Act. Sklodowski, 832 N.E.2d at 196. The underlying facts and allegations that comprised the breach of contract claim were identical to those in the consumer fraud claim. Although the plaintiff did not mention the contract or its terms in

the consumer fraud claim, the Illinois Appellate Court affirmed the trial court's dismissal of the consumer fraud claim, finding that it was, in essence, a breach of contract claim. Id. at 197.

In this case, Counts I and II are based on the same set of facts and conduct by Liberty Mutual. Each Count complains that Liberty Mutual settled the Wulf claim without McNay's knowledge and consent, and that this led to increased retrospective premium adjustments for McNay. McNay Complaint, ¶¶ 30, 38-40. While McNay does not mention the terms of the workers' compensation policies in question in Count II, the actions that McNay claims violated the Illinois Consumer Fraud Act are identical to those that McNay claims constituted a breach of contract.

However, McNay has not attached the policies in question to the McNay Complaint. The Court, therefore, does not know what the terms of the policies are, and whether McNay's allegations in Count I are cognizable in contract. McNay is allowed to plead in the alternative, and has adequately alleged a violation of the Illinois Consumer Fraud Act by pleading the elements described above. See Connick, 675 N.E.2d at 594. While "the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a

redundant remedy," at this stage in the proceeding, and viewing the facts in the light most favorable to McNay, the Court finds that McNay has stated a claim under the Illinois Consumer Fraud Act, and declines Liberty Mutual's request to dismiss Count II.  See  Zankle, 724 N.E.2d at 992-93.

Therefore, the Court denies Liberty Mutual's Motion with respect to Count II of the McNay Complaint.

II.   COUNT III: UNJUST ENRICHMENT

Liberty Mutual next maintains that McNay cannot state a claim for unjust enrichment because McNay has alleged an express contract between the parties.  McNay counters that it is allowed, under the Federal Rules, to plead in the alternative, and that its unjust enrichment claim is an alternative cause of action to the breach of contract claims.

A plaintiff is free to plead breach of contract and unjust enrichment in the alternative.  Horwitz v. Sonnenschein Nath & Rosenthal LLP, 926 N.E.2d 934, 947 (Ill.App. 1st Dist. 2010); Guinn v. Hoskins Chevrolet, 836 N.E.2d 681, 704 (Ill.App. 1st Dist. 2005); see Fed. R. Civ. P. 8(d)(2)-(3). However, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." La Throp v. Bell Fed. Sav. & Loan Assoc., 370 N.E.2d 188 (Ill. 1977) (quoting

Brooks v. Valley Nat'l Bank, 548 P.2d 1166, 1171 (Ariz. 1976)); see People ex rel. Hartigan v. E&E Hauling, Inc., 607 N.E.2d 165, 177 (Ill. 1992) (affirming dismissal of unjust enrichment count because count contained allegations that there was an express contract between the parties). This is because, in most instances, unjust enrichment is a cause of action based on an implied or quasi-contract. Hartigan, 607 N.E.2d at 177.

While McNay is correct that it can plead breach of contract and unjust enrichment in the alternative, the allegations in the McNay Complaint fail as a matter of law because McNay alleges the existence of an express contract between it and Liberty Mutual in Count III. For example, McNay alleges that Liberty Mutual "breached its contractual duty of good faith and fair dealing" and "acted in bad faith in breaching its contractual duty of good faith and fair dealing . . . ." McNay Complaint, p. 10. It is true, as McNay argues, that an unjust enrichment claim can be grounded in quasi-contract or tort. See Peddinghaus v. Peddinghaus, 692 N.E.2d 1221, 1225 (Ill.App. 1st Dist. 1998). However, McNay's allegations do not support its argument that Count III is based in tort because McNay specifically references the express contract between the parties in Count III.

Count III, as written, fails to state a claim for unjust enrichment.

13

Therefore, Liberty Mutual's request to dismiss Count III is granted.

III.  COUNT IV: BAD FAITH

Finally, Liberty Mutual argues that Count IV fails to state a cognizable claim under the § 155 of the Illinois Insurance Code because that provision does not apply to the facts of this case.

Section 155 of the Illinois Insurance Code allows for recovery of, among other things, attorneys' fees and limited penalties in a case against an insurance company if "there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable . . . ." 215 ILCS 5/155(1). The purpose of § 155 is to "provide[] an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." Cramer v. Ins. Exchange Agency, 675 N.E.2d 897, 900 (Ill. 1996). The Illinois Appellate Court has noted that a "cause of action for breach of contract for failure to properly adjust claims" does not "fall[] squarely within the provisions of [§ 155]." National Sur. Corp. v. Fast Motor, 572 N.E.2d 1083, 1089 (Ill.App. 1st Dist. 1991).

Here, Liberty Mutual argues that § 155 does not apply because Liberty Mutual recognized liability under the workers' compensation policies and paid the Wulf claim. McNay counters, without citing relevant authority, that "Liberty Mutual misstates the application of § 155 . . . ." Response, p. 10. The Court agrees with Liberty Mutual. The Illinois Supreme Court has clearly stated that the purpose of § 155 is to protect policyholders like McNay from insurers who refuse "to recognize liability and pay a claim under a policy . . . ." Cramer, 675 N.E.2d at 900. The insured in Fast Motor brought claims very similar to the claims McNay raises in this case, but the Illinois Appellate Court affirmed the trial court's refusal to award attorneys' fees and costs under § 155, at bar, noting that the provision did not apply to such claims. Fast Motors, 572 N.E.2d at 1089-90. McNay's § 155 claim fails as a matter of law.

Therefore, the Court grants Liberty Mutual's Motion with respect to Count IV, and dismisses Count IV.

## CONCLUSION

THEREFORE, Liberty Mutual's Motion to Dismiss Plaintiff's Counts II – IV of the First Amended Complaint (d/e 19) is GRANTED in part. The Court dismisses Counts III and IV of McNay's Plaintiff's First Amended

Complaint (d/e 10). The Motion is DENIED with respect to Count II.

IT IS THEREFORE SO ORDERED.

ENTER: July 22, 2010

    FOR THE COURT:

                                          s/ Jeanne E. Scott
                                          JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE